Filed 8/14/14  Rickley v. Jamison CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| REBECCA A. RICKLEY,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>MARK B. JAMISON,<br><br>        Defendant and Respondent. | B250972<br><br>(Los Angeles County<br>Super. Ct. No. SC116576) |

APPEAL from an order of the Superior Court of Los Angeles County,

Daniel J. Buckley, Judge.  Affirmed.

Law Offices of Natasha Roit and Natasha Roit for Plaintiff and Appellant.

Law Offices of David J. Weiss, David Weiss, Daron Barsamian; Pollack,

Vida & Fisher and Daniel P. Barer for Respondent.

Rebecca A. Rickley appeals an order denying her motion to disqualify defense counsel and expert witnesses in a dental malpractice action. Defense counsel agreed to limit the scope of deposition subpoenas seeking Rickley's medical records from third parties and served new subpoenas accordingly. But defense counsel failed to withdraw the original subpoenas, and the deponents produced documents requested by the original subpoenas beyond the agreed limited scope. Rickley contends the trial court applied incorrect legal standards in denying her disqualification motion, and the evidence does not support the court's ruling. We conclude that the court properly denied the disqualification motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Complaint*

Rickley filed a complaint against Mark B. Jamison in April 2012 alleging a single count for dental malpractice. She alleges that Jamison, a dentist, negligently examined, diagnosed, and treated her resulting in a serious infection impacting her heart, a tooth extraction, and other injuries.[1]

### 2. *Deposition Subpoenas, Correspondence, and New Subpoenas*

Jamison's counsel served deposition subpoenas on the custodian of records for Cedars Sinai Medical Center (Cedars) and Dr. Alice Cruz in August 2012. The subpoenas requested all records relating to treatment or care of Rickley "regardless of date."

---

[1] We judicially notice Rickley's complaint filed on April 4, 2012 (Evid. Code, § 452, subd. (d)), which Rickley failed to include in her appellant's appendix.

2

Rickley's counsel sent Jamison's counsel an e-mail in August 2012 objecting to the subpoenas as overbroad and invasive of her right to privacy. She asked counsel to engage in a "meet and confer" to limit the scope of the subpoenas, immediately advise the copy service not to copy any records, and ask the copy service to notify the deponents that no records were due. Jamison's counsel responded by offering to limit the subpoenas to a five-year period preceding the dental treatment at issue. Jamison's counsel stated that if Rickey's counsel agreed to such limitation, she would contact the copy service "to amend the language in the subpoenas and new subpoenas will be issued with a copy sent to you."

Rickley's counsel responded that a five-year limit was reasonable, but the subpoenas should also be limited to relevant medical records. She offered to obtain the records herself with her client's authorization to see whether the records requests could be worded in a way so as to satisfy both parties' concerns. She requested that Jamison's counsel "hold off on serving the Cedars and related subpoenas for some agreed upon time." Jamison's counsel responded by e-mail:

"For now, we agree to having you obtain the Cedars-Sinai records via authorization and segregating out the records you believe to be confidential and privileged on the basis of privacy. We obviously do not know what is contained in the records so we would like you to work with us with regard to what is omitted and so forth. I have asked Gail to put a hold on the subpoenas so that you may proceed with the authorization, and we will reserve our right to move forward with the subpoenas if for some reason we are not able to reach an agreement. . . . "

3

Rickley did not move to quash the subpoenas. Her counsel apparently obtained records from the deponents and provided them to Jamison's counsel. Jamison's counsel served new deposition subpoenas on the same deponents in February 2013 requesting all records relating to Rickley's "heart and cardiac condition only" [capitalization omitted], pursuant to the parties' agreement. Rickley's counsel requested a copy of any records obtained by the copy service, but the copy service provided none, so she assumed that no further documents were produced.

3.      *Records Production*

Jamison's counsel apparently did not withdraw the original subpoenas. Cedars and Dr. Cruz each produced Rickley's entire medical file in or about March 2013, including more than 10 years of records relating to matters not limited to her heart and cardiac condition. Rickley's counsel learned of the production in July 2013.

4.      *Ex Parte Application and Motion to Disqualify*

Rickley filed an ex parte application on July 29, 2013, and obtained an order requiring Jamison, his counsel, his expert witnesses, and anyone else to whom they had provided Rickley's medical records to return within 24 hours all hard copies of such records, destroy all digital or electronic versions of the records and all notes derived from the records, and to not disclose the contents of the records. The order also required the copy service to return such records to Rickley and destroy any digital or electronic versions. The order stated that Jamison's counsel must file within 48 hours a declaration of compliance with the order. Jamison's counsel failed to timely file such a declaration and failed to timely return the hard copies to Rickley's counsel.

Rickley filed a motion on August 1, 2013, to disqualify Jamison's counsel and expert witnesses and for monetary sanctions. She argued that Jamison's counsel had failed to withdraw the original subpoenas as agreed and instead obtained records exceeding the scope of the agreement. She argued that Jamison's counsel was obligated to notify opposing counsel and stop reviewing and disseminating the records, but had failed to do so. She also argued that Jamison's counsel had failed to comply with the ex parte order. She argued that disqualification was appropriate pursuant to *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807 (*Rico*) and *Clark v. Superior Court* (2011) 196 Cal.App.4th 37 (*Clark*) and that both Jamison's counsel and expert witnesses to whom the records had been provided should be disqualified and monetary sanctions awarded.

Jamison opposed the motion arguing that his counsel had limited the scope of the subpoenas in accordance with the agreement and that the records were produced pursuant to the new subpoenas rather than the original subpoenas. He argued that Rickley had an opportunity to obtain copies of the records produced by the deponents but failed to do so and failed to object to the production until July 2013. He also stated that his counsel had returned the records received from Cedars and Dr. Cruz on July 26, 2013, and had asked the expert witnesses to whom the records had been provided to discard them. Jamison argued that the cases cited by Rickley involving attorney-client privilege and attorney work product were inapplicable and that there was no basis for disqualification.

5

The trial court denied the disqualification motion on August 15, 2013. Its minute order stated that *Rico*, *supra*, 42 Cal.4th 807, and *Clark*, *supra*, 196 Cal.App.4th 37, both involved the disqualification of attorneys and retained experts who had inadvertently viewed documents protected by the attorney-client privilege or attorney work product, and that this case was distinguishable. It stated that Rickley failed to show that Jamison had obtained an unfair advantage or that any of the information could be used against her in this case. It also stated that the records were produced pursuant to "a lawful subpoena" and were equally available to Rickley at the time of production, and that Rickley had failed to cite any authority for disqualification in these circumstances.[2] Jamison's counsel filed a declaration the following day stating that the medical records in question had been either returned or destroyed.[3]

Rickley timely appealed the order denying her disqualification motion.[4]

### CONTENTIONS

Rickley contends (1) the trial court applied an incorrect legal standard by failing to treat confidential medical records the same as records protected by the attorney-client

---

[2]    We judicially notice the minute order filed on August 15, 2013 (Evid. Code, § 452, subd. (d)), which Rickley failed to include in her appellant's appendix.

[3]    We judicially notice the declaration of David J. Weiss filed on August 16, 2013. (Evid. Code, § 452, subd. (d).)

[4]    An order granting or dissolving an injunction, or refusing to grant or dissolve an injunction, is appealable. (Code Civ. Proc., § 904.1, subd. (a)(6).) An order denying a motion to disqualify counsel is appealable as an order refusing to grant an injunction. (*Meehan v. Hopps* (1955) 45 Cal.2d 213, 215; *Sharp v. Next Entertainment, Inc.* (2008) 163 Cal.App.4th 410, 424, fn. 7.)

6

privilege or attorney work product for purposes of disqualification, requiring her to show that Jamison had gained an unfair advantage from the disclosure, and failing to place the burden on Jamison to show lack of prejudice; (2) the evidence does not support the denial of her disqualification motion; and (3) both defense counsel and expert witnesses should be disqualified.

## *DISCUSSION*

### 1.  *Standard of Review*

We review the ruling on a motion to disqualify generally for abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee*).)  We defer to the court's express or implied factual findings if they are supported by substantial evidence.  (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159 (*Charlisse*); *SpeeDee*, *supra*, at p. 1143.)  We independently review the court's legal conclusions.  (*Charlisse*, *supra*, at p. 159.)  The court's application of the law to the facts is reversible only if it is arbitrary and capricious.  (*Ibid.*)

"Motions to disqualify counsel are especially prone to tactical abuse because disqualification imposes heavy burdens on both the clients and courts:  clients are deprived of their chosen counsel, litigation costs inevitably increase and delays inevitably occur.  As a result, these motions must be examined 'carefully to ensure that literalism does not deny the parties substantial justice.'  [Citation.]" (*City of Santa Barbara v. Superior Court* (2004) 122 Cal.App.4th 17, 23.)

### 2.  *The Trial Court Applied the Correct Legal Standards*

An attorney who obtains attorney-client privileged documents or attorney work product disclosed through inadvertence has certain obligations. An attorney receiving such materials must refrain from examining them any more than is necessary to determine whether the materials are privileged or otherwise confidential and protected from disclosure, and must immediately notify opposing counsel. (*Rico*, *supra*, 42 Cal.4th at pp. 817-818; *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 656.) This rule applies not only to materials protected by the attorney-client privilege or attorney work product doctrine, but also to any " 'documents that are plainly privileged and confidential, regardless of whether they are privileged under the attorney-client privilege, the work product privilege, or any other similar doctrine that would preclude discovery based on the confidential nature of the document.' " (*Rico*, *supra*, at pp. 817-818, fn. 9.)

Disqualification of an attorney who fails to comply with such obligations is not automatic, but may be appropriate depending on the circumstances. (*Rico*, *supra*, 42 Cal.4th at p. 819; *Clark*, *supra*, 196 Cal.App.4th at p. 54.) *Rico* involved a plaintiff's attorney who obtained the notes of defense counsel through the inadvertence of a deposition reporter. The notes were from a litigation strategy meeting between defense counsel, defense experts, and client representatives. The plaintiff's attorney quickly realized the nature of the 12-page document, but he retained it, provided copies to his co-counsel and experts, discussed it with his experts, and surreptitiously used it in deposing experts for the opposing party. (*Id.* at pp. 811-812 & fn. 3.) *Rico* concluded

8

that the document was attorney work product and that the plaintiff's attorney had failed to comply with his obligations stated above.  (*Id.* at pp. 815, 817-819)

Rico also held that the disqualification of the plaintiffs' attorneys and experts was not an abuse of discretion.  (*Rico*, *supra*, 42 Cal.4th at pp. 813, 819.)  Not only did the attorney fail to comply with his obligations upon receiving the attorney work product, but he also " 'acted unethically in making full use of the confidential document.' "  (*Id.* at p. 819, quoting the Court of Appeal opinion.)  *Rico* stated, "The Court of Appeal properly concluded that such use of the document undermined the defense experts' opinions and placed defendants at a great disadvantage.  Without disqualification of plaintiffs' counsel and their experts, the damage caused by Johnson's use and dissemination of the notes was irreversible."  (*Ibid.*)

*Clark*, *supra*, 196 Cal.App.4th 37, involved a plaintiff's attorney who obtained from his client attorney-client privileged documents belonging to the defendant.  The plaintiff was formerly employed by the defendant and retained certain attorney-client privileged documents after the termination of his employment, contrary to a nondisclosure agreement.  (*Id.* at pp. 42-43.)  *Clark* concluded that the attorney had failed to comply with his obligations to limit his review of the privileged documents and immediately notify opposing counsel.  (*Id.* at pp. 52-54.)  *Clark* also held that the disqualification of the attorney was proper.  *Clark* stated that the evidence supported the trial court's conclusion that the attorney's review of the privileged materials could affect the outcome of the litigation, and held that disqualification was proper as a prophylactic

9

measure to avoid future prejudice to the defendant and was not an abuse of discretion. (*Id.* at p. 55.)

Rickley contends the trial court erroneously concluded that the legal standards for disqualification under *Rico*, *supra*, 42 Cal.4th 807, and *Clark*, *supra*, 196 Cal.App.4th 37, were inapplicable to confidential medical records. We disagree. *Rico* and *Clark* held that the attorneys' failure to comply with their obligations to limit their review of confidential documents and immediately notify opposing counsel, and the potential prejudice to the opposing party resulting from the attorneys' use and dissemination of the confidential documents, justified the disqualification of counsel. *Rico* and *Clark* concluded that the attorneys' use and dissemination of attorney-client privileged documents and attorney work product in those circumstances could seriously prejudice the opposing party. The trial court here concluded that Rickley failed to show that the disclosure of her confidential medical records was likely to result in serious prejudice. We conclude that this was proper. Rickley has shown no legal error and no abuse of discretion in this regard.

Rickley also contends the trial court erroneously required her to show that Jamison had obtained an unfair advantage as a result of the disclosure, purportedly requiring her to disclose the contents of her confidential medical records. The order denying the disqualification motion stated in this regard, "Plaintiff failed to show that anything in her medical records gives Defendant an unfair advantage in this case, or that any of that information could possibly be used against her in the proceedings." In our view, the trial court properly considered the nature of the confidential documents and

10

concluded that the disclosure of confidential medical records was unlikely to prejudice Rickley so seriously as to justify the disqualification of counsel.  Rickley has shown no legal error or abuse of discretion in this regard.

"Protecting the confidentiality of communications between attorney and client is fundamental to our legal system.  The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." [Citation.]'  [Citation.]  To this end, a basic obligation of every attorney is '[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.'  (Bus. & Prof. Code, § 6068, subd. (e).)"  (*SpeeDee*, *supra*, 20 Cal.4th at p. 1146.)  The disclosure of confidential medical records, however regrettable and wrongful such disclosure may be in a particular case, generally does not threaten core values fundamental to our legal system to such a degree.

Rickley also cites *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324 (*Adams*) for the proposition that an attorney who violates his or her obligations relating to the receipt of confidential documents should bear the burden of showing lack of prejudice to the opposing party in order to avoid disqualification.  *Adams* is not on point.

*Adams*, *supra*, 86 Cal.App.4th 1324, involved the disqualification of an attorney whose former firm had represented a client in a matter substantially related to a current lawsuit in which the attorney represented the same client.  The attorney was not

11

personally involved in his former firm's representation of the client. (*Id.* at pp. 1329-1330.) *Adams* concluded that the attorney's knowledge of confidential information, necessarily resulting in his disqualification, could not be presumed solely from the attorney's membership in his former firm. (*Id.* at p. 1337.) Instead, *Adams* stated that a "modified version of the 'substantial relationship' test" applied.[5] (*Adams, supra,* at p. 1340.) *Adams* stated that the trial court must determine based on the particular circumstances whether the attorney was reasonably likely to have obtained confidential information relating to the current representation while working for his former firm. (*Id.* at pp. 1340-1341.) *Adams* stated further, "in light of the paramount importance of maintaining the inviolability of client confidences, where a substantial relationship between the former firm's representation of the client and the current lawsuit has been shown . . . , the attorney whose disqualification is sought should carry the burden of proving that he had no exposure to confidential information relevant to the current action while he was a member of the former firm. [Citation.]" (*Id.* at pp. 1340-1341.)

The present action, in contrast, does not involve an attorney's conflict of interest arising from the successive representation of clients with potentially adverse interests or the imputation of knowledge to an attorney based on his or her former membership in a law firm. *Adams, supra,* 86 Cal.App.4th 1324, is not on point and does not support

---

[5] Disqualification generally is required in cases involving an attorney's successive representation of clients with potentially adverse interests if the former client demonstrates a "substantial relationship" between the subjects of the prior representation and the current representation. (*Charlisse, supra,* 45 Cal.4th at p. 161.)

12

imposing the burden on defense counsel here to show a lack of prejudice in order to avoid disqualification.

      3.    *Substantial Evidence Supports the Denial of Disqualification*

Rickley contends there was no substantial evidence to support the denial of her disqualification motion for three reasons. First, she argues that the evidence does not support the trial court's statement that the medical records were produced pursuant to "a lawful subpoena." Second, she argues that the evidence does not support the court's statement that the records produced were equally available to Rickley at the time of production. Third, she argues that defense counsel failed to timely file a declaration of compliance with the ex parte order as required by the order. She also argues that the denial of her disqualification motion in these circumstances was unreasonable and an abuse of discretion.

Rickley has not shown that the trial court's characterization of the deposition subpoenas as "lawful" or its statement that the records were available to Rickley at the time of production were of such importance to its ruling that any error in these regards was prejudicial. We conclude that it was not. She also fails to show that the denial of her disqualification motion was arbitrary and capricious in light of the circumstances. We conclude that the evidence supports the denial of her disqualification motion as to both defense counsel and experts and that she has shown no abuse of discretion.

## *DISPOSITION*

The order is affirmed.  Jamison is entitled to recover his costs on appeal.


***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***



CROSKEY, Acting P. J.


WE CONCUR:




KITCHING, J.




ALDRICH, J.



14